UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | |
| JOSE RIGOBERTO IGLESIAS | NO.: 13-00119-BAJ-RLB |

## RULING AND ORDER

Before the Court is the **Motion to Vacate under 28 U.S.C. § 2255 (Doc. 135)** filed by Petitioner, Jose Rigoberto Iglesias. The United States filed an Opposition. (Doc. 141). An evidentiary hearing is not warranted. For the following reasons, the **Motion to Vacate (Doc. 135)** is **DENIED**.

I. BACKGROUND

On November 20, 2013, Petitioner and his brother, Jose Luis Argueta Iglesias ("Argueta"), were charged with conspiracy to distribute, and possession with the intent to distribute, 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count One); distribution of methamphetamine (in varying amounts up to 500 grams), in violation of 21 U.S.C. § 841(a)(1) (Counts Two—Seven, and Nine); and possession, with intent to distribute, 50 or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count Eight). (Doc. 55). Petitioner entered a plea of not guilty and his case proceeded to trial. Before trial, the Court granted Petitioner's motion to dismiss Count Two (distribution of a detectable

1

amount of methamphetamine), after finding that procedurally, the United States' decision to add the additional count after the discovery deadline prejudiced Petitioner.[1] (Doc. 117 at pp. 13–14; *see also* Doc. 57). However, his brother, Argueta, executed a plea agreement in which he pleaded guilty to the lesser included offenses in Counts One, Four, Six, and Seven. (Doc. 97).

On February 26, 2014, the jury returned guilty verdicts on Counts One (conspiracy), Three through Seven (distribution) and Eight (possession with intent to distribute), but could not reach a verdict on Count Nine (distribution of 50 grams or more of methamphetamine). At trial, the United States presented, *inter alia*, testimony from confidential informants, Angela Muniz ("Muniz") and Tonya Honeycutt ("Honeycutt"), which later became an issue on appeal. *See United States v. Iglesias*, 634 F. App'x 971, 972 (5th Cir. 2015). Both Muniz and Honeycutt testified that they were former drug users who worked with Argueta and Petitioner to buy and sell methamphetamine. *Id.* After being approached separately by the FBI, both agreed to participate in undercover, controlled drug transactions. *Id.*

---

[1] The Fifth Circuit mischaracterized the Court's reasoning for dismissing Count Two. According to the Fifth Circuit, "the court granted [Petitioner's] motion to dismiss count two (distribution of a detectable amount of methamphetamine), after finding that count was based on a transaction outside the dates of the charged conspiracy." *United States v. Iglesias*, 634 F. App'x 971, 972 (5th Cir. 2015). However, the record reflects that Count Two was dismissed because after the Court issued an order continuing the trial date, the United States decided, as "a procedural tactical decision," to supersede the indictment to add Count Two so that the jury would understand why it was offering evidence for that transaction. (Doc. 117 at pp. 11–12). The Court ruled that such action prejudiced the Petitioner because the order continuing the trial date did not extend discovery deadlines, and the additional count prejudiced Petitioner by exposing him to a longer sentence of incarceration. (Doc. 117 at pp. 13–14). The count was struck, but the evidence to support the offense was admissible to support the charged conspiracy. (*Id.*).

2

On March 12, 2014, Petitioner filed a Motion for New Trial and an Amended Motion for New Trial, alleging in both motions that Muniz, one of the United States' key witnesses, lied during her testimony about her drug use and criminal history. (Docs. 65, 83). Petitioner also alleged that the United States failed to produce all evidence required under its discovery obligations, particularly information about Muniz's misdemeanor summons for marijuana use issued to her during the period of time that she was acting as an informant in the investigation against Petitioner. (*Id.*). On appeal, the Court of Appeals for the Fifth Circuit affirmed the Court's denial of the Motions holding that Muniz's misdemeanor marijuana summons was not "material" to Petitioner's guilt, and thus, was not subject to the United States' duty to disclose under *Brady*. *See United States v. Iglesias*, 2014 WL 4373213, at *1 (M.D. La. Sept. 3, 2014), *aff'd*, 634 F. App'x 971 (5th Cir. 2015).

On October 30, 2014, the Court sentenced Petitioner to a term of imprisonment of 192 months, five years of supervised release, and an assessment in the amount of $700. (Doc. 104). On January 21, 2016, the Fifth Circuit issued its mandate affirming Petitioner's conviction. (Doc. 129).

Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255 on November 7, 2016. (Doc. 135). In his motion, Petitioner asserts three grounds: (1) "Ineffective Assistance of Counsel," (2) "Prosecutorial Misconduct," and (3) "Cause and Prejudice To The Defendant." (Doc. 135 at pp. 4–6; *see also* Doc. 135-1 at p. 4). Petitioner claims that his attorney was ineffective by failing to: (1) investigate, and thus discover

evidence needed to impeach Muniz and Honeycutt at trial; (2) interview his brother/co-defendant Argueta, and call him as a witness at trial; (3) object to the admissibility of recorded conversations (phone calls); (4) object to the dates alleged in Count One (conspiracy); and (5) object to the amounts alleged in Count One during sentencing. (Doc. 135-1 at pp. 7–11). Moreover, (6) he alleges ineffective assistance of appellate counsel for failing to challenge, on appeal, the sufficiency of the evidence supporting his conviction for Count One, both at trial and at sentencing. (*Id.* at p. 11).

Petitioner further claims that the United States engaged in prosecutorial misconduct by: (1) knowingly presenting perjured testimony from Honeycutt and Muniz, who he contends were "very unreliable witnesses;" and (2) using inadmissible exhibits and testimony at trial for the purposes of misleading and confusing the jury. (*Id.* at pp. 12–17).

## II. LEGAL STANDARD

Section 2255 provides that a federal prisoner serving a court-imposed sentence may move the court to vacate, set aside or correct his sentence. 28 U.S.C. § 2255(a). Only a narrow set of claims are cognizable on a § 2255 motion. The statute identifies four grounds on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.*

4

Once a petitioner files a § 2255 motion, the district court is required by statute to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). Applying this statutory command triggers a two-step inquiry. First, the court must determine whether the record "conclusively negate[s] the factual predicates asserted in support of the motion for post-conviction relief," and second, whether "the petitioner [would] be entitled to post-conviction relief as a legal matter if those factual allegations which are not conclusively refuted" are true. *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979).

## III. DISCUSSION

### A. Cause and Prejudice

While § 2255 appears broad, the scope of review is actually narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that a collateral challenge may not substitute for an appeal. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). As such, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *Shaid*, 937 F.2d at 232. Nevertheless, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural

default and actual prejudice resulting from the error. *Cervantes*, 132 F.3d at 1109; *Shaid*, 937 F.2d at 232 (citing *Frady*, 456 U.S. at 166).

Attorney error may constitute "cause" for a procedural default; however, the petitioner must show that counsel's actions or inactions amounted to ineffective assistance of counsel. *Cotton v. Cockrell*, 343 F.3d 746, 754–55 (5th Cir. 2003) (citing *Murray v. Carrier*, 477 U.S. 477, 478 (1986)); *Ortez v. Dretke*, 108 F. App'x. 188, 190 (5th Cir. 2004). Thus, "attorney error short of ineffective assistance of counsel" in the constitutional sense "does not constitute cause for a procedural default." *Murray*, 477 U.S. at 492. Accordingly, ineffective assistance adequate to establish "cause" for the procedural default of a constitutional claim must be proven in accordance with the principles set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Here, Petitioner has alleged that any procedurally defaulted claims are entitled to consideration on the merits because he can demonstrate "cause" through ineffective assistance of counsel and prosecutorial misconduct.[2] (Doc. 135-1 at pp. 17–21).

### B. Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel claims. (Doc. 135-1). To prevail on an ineffective assistance of counsel claim, a petitioner must establish:

---

[2] To the extent Petitioner attempts to re-allege his attorney's failure to exercise due diligence when he failed to conduct a search before trial that would have revealed Muniz's criminal records, such claim is beyond the scope of a § 2255 motion because Fifth Circuit jurisprudence makes it clear that issues previously raised and disposed of on appeal from an original judgment of conviction are not considered in § 2255 motions. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986), *cert. denied*, 476 U.S. 1118 (1986); *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004).

(1) that counsel's performance was deficient; and (2) that the deficient conduct prejudiced him. *Strickland*, 466 U.S. at 687; *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Counsel's performance is deficient only when his "representation [falls] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689.

### 1. *Failure to Investigate*

Petitioner alleges that his attorney failed to conduct an adequate and thorough pretrial investigation, which would have led to the discovery of evidence "needed to impeach the only two witnesses used by the prosecution, [] Muniz and [] Honeycut[t]." (Doc. 135-1 at p. 8). To prevail on a failure to investigate claim, the petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013) (quoting *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011)). There are no "strict rules" for counsel's conduct beyond "the general requirement of reasonableness." *Id.* at 242. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Id.* (citations omitted).

Petitioner claims that his attorney "never tried to find any of the other so-called customer's [sic] who purchased the methamphetamine from the prosecution's

confidential informants who were also" drug users and sellers. (Doc. 135-1 at p. 8). Petitioner further asserts that the connection between Muniz and Honeycutt were with his brother, Argueta, and that there was no direct connection between him and the charges. (*Id.*). He then makes the generalized assertion that had his attorney investigated the case, "he would have destroyed a great part of the evidence presented at trial through testimony and exhibits." (*Id.*).

Here, Petitioner has alleged that had his attorney adequately conducted a pretrial investigation to find any of the other persons who purchased methamphetamine from the informants, such an investigation may have revealed that he was not directly connected to the charged crime, and that it was his brother who was connected to the informants. However, Petitioner has not alleged with specificity how such an investigation would have altered the outcome of the trial.

Contrary to Petitioner's contention, Muniz and Honeycutt were not the only witnesses who provided testimony regarding his participation in drug-trafficking, and the conspiracy for which he was convicted. *See Iglesias*, 634 F. App'x at 975. Local law enforcement and FBI Special Agents testified about their investigation of Petitioner; and, both Honeycutt and Muniz provided extensive details regarding Petitioner's involvement, including that they received methamphetamine directly from him, and that both deposited cash proceeds from drug transactions into his bank account. *Id.* Additionally, both Muniz and Honeycutt testified that Petitioner introduced them to Argueta and Petitioner's nephew, who supplied them with

methamphetamine when Petitioner was out of town. *Id.* at 972–73. Thus, the impact of finding other "so-called customers" would have been minimal and cumulative to the jury. Therefore, there is sufficient record evidence to support the conclusion that the attorney's investigation and preparation for trial was not deficient. The failure to investigate claim is dismissed.

### 2. *Failure to Interview Witness*

Petitioner contends that had his attorney interviewed Argueta or called him as a witness at trial, his brother's testimony would have exculpated him from the charged conspiracy. (Doc. 135-1 at p. 9). Particularly, Petitioner asserts that his brother would have explained that (1) Argueta and Muniz were in an intimate relationship during the entire conspiracy; and (2) the money deposited into Petitioner's bank account, which he claims was earned by a honest living, was given to both Muniz and Honeycutt by Argueta, who had no valid identification (so he could not open his own bank account), so that Petitioner could send the money to El Salvador for the benefit of his mother. (*Id.*). The United States argues that Argueta executed a plea agreement containing a stipulated factual basis implicating Petitioner in the charged conspiracy, which would have weakened Argueta's credibility, coupled with the number of inconsistent statements Argueta made to law enforcement following his arrest. (Doc. 141 at p. 8).

The Court agrees. "Upon a reasonable investigation, defense counsel [] has an obligation to make reasonable strategic decisions regarding which witnesses and

evidence he will present." *Trottie*, 720 F.3d at 243 (citing *Strickland*, 466 U.S. at 690–91). "[T]he failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice." *Id.* (quoting *Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984)). As the Fifth Circuit has held, "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." *Id.* (quoting *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997)).

Here, it was both reasonable and strategic to avoid calling Argueta to testify. Pursuing such testimony was double-edged in nature, especially considering the contents of the factual stipulation Argueta agreed to, which implicated Petitioner in the conspiracy. Further, there is no evidence in the record demonstrating that there is any merit to Petitioner's assertions. However, there is sufficient record evidence here to support the conclusion that his attorney's decision not to present Argueta as a witness was not deficient. Therefore, the failure to interview claim is dismissed.

3.  *Failure to Object to the Admissibility of Recorded Conversations (phone calls)*

Petitioner argues that his attorney failed to file a motion to authenticate the alleged phones calls between him and the informants, which would have demonstrated that those calls were actually between Argueta and the informants. (Doc. 135-1 at p. 9). Petitioner further contends that the United States should have been unable to introduce exhibits and testimony regarding these phone calls without proper authentication, *i.e.*, "voice prints." (*Id.*). The United States asserts that voice

10

print evidence is not required to authenticate a recording, and that reliance on such to object to the admissibility of the recording would have been futile.[3] (Doc. 141 at p. 9).

Nonetheless, the Court need not reach the merits of Petitioner's contention that the phone recordings were not properly authenticated because he has failed to satisfy the second prong of the *Strickland* standard. Here, the numerous phone calls described throughout the trial transcript were not admitted into evidence. (Doc. 117 at pp. 98, 113, 122, 139). Rather, the local law enforcement officers and FBI Special Agents testified in one to two sentences that before each controlled drug purchase where an informant was involved, the informant conducted "a consentually [sic] monitored, recorded phone call" to either the Defendant or to Argueta for the purposes of scheduling the drug encounters and learning the temperament of the "target." (*Id.*). No further testimony regarding the contents of said recordings was heard, and no audio was played. Additionally, of the nine or so monitored phone calls all but one were made to Argueta, which both parties attempted to differentiate before the jury. (*Id.*; *see also* Doc. 94 at p. 59). Therefore, Petitioner has not demonstrated prejudice because the actual phone calls were not admitted into

---

[3] The Court notes the discrepancy between the types of recordings referenced by both parties. Petitioner is very specific in his memorandum in which he is referring to "*phone calls* between the informants and [Petitioner]," and he states that "voice prints [] would have proved [sic] those *calls* never happened." (Doc. 135-1 at p. 9) (emphasis added). However, the United States is very particular in its Opposition that the recording referenced by Petitioner was Exhibit 7, which was "a videotaped recording of a drug trafficking encounter between Honeycutt and the defendant" that formed the basis for Count Nine, that is, the count the jury could not reach a verdict on. (Doc. 141 at p. 9).

11

evidence at trial. Accordingly, the failure to object to the authenticity of the phone calls claim is dismissed.

### 4. *Failure to Object to the Dates Alleged in Count One (conspiracy)*

Petitioner argues that his attorney was ineffective for not contesting the dates alleged in Count One (conspiracy), which dates were September 2011 through February 2013, after the Court dismissed Count Two (distribution), which date was February 2, 2012, after finding that such charge was based on a transaction outside the dates of the charged conspiracy. (Doc. 135-1 at p. 10); *see also Iglesias*, 634 F. App'x at 972. However, as previously addressed, Count Two was dismissed because, procedurally, the United States' decision to add the additional count after the discovery deadline prejudiced Petitioner by exposing him to a longer period of incarceration. (Doc. 117 at pp. 13–14). Nonetheless, Petitioner's contention is belied by the record.

First, Count Two charged a drug distribution offense, not conspiracy; thus, the February 2, 2012, transaction was being offered only to support the conspiracy charge. Petitioner is mistaken in his belief that the dismissal of a count for distribution would in effect negate the dates of the conspiracy as a whole. Second, after the Court struck Count Two, counsel for Petitioner raised numerous objections to the United States' ability to offer evidence of that transaction in support of the conspiracy. (Doc. 117 at pp. 22–26). Those objections were based on both the Sixth Amendment Confrontation Clause as it related to the confidential informant, who

was not a witness at trial; and the production of new Jencks Material as it related to witnesses who testified before the grand jury. (*Id.*). After hearing arguments, the Court overruled both objections finding that there was no new Jencks Material or any Sixth Amendment Confrontation issues with respect to the confidential informant involved in the transaction at issue. (*Id.*). Therefore, Petitioner has failed to establish that his attorney was deficient.

### 5. *Failure to Object to the Amounts Alleged in Count One During Sentencing*

With respect to sentencing issues, prejudice is established if a defendant demonstrates with reasonable probability that but for his attorney's errors regarding sentencing matters, he would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438–39 (5th Cir. 2004). Petitioner claims that his attorney failed to object to the amounts alleged in Count One—conspiracy to distribute, and possession with the intent to distribute, 500 grams or more of methamphetamine—during sentencing because "without the conviction on count two and the conviction on count nine the amount will not amount to over 500 grams." (Doc. 135-1 at pp. 10–11). However, this contention is belied by the record. Counsel for Petitioner raised numerous objections to the Presentence Investigation Report ("PSR") vigorously challenging the amount of methamphetamine attributed to Petitioner. (Docs. 72, 78).

Specifically, Petitioner's attorney's objections, which were Objection Numbers 1, 3, 4, 5, 6, 7, 8 and 9 in the Addendum to the PSR, provided a detailed criticism of

13

the credibility of the informants who testified during the trial, and provided that if the "Court does not believe a witness' testimony or finds it inconsistent with other evidence, the Court has discretion to amend the drug quantity estimate accordingly." (Doc. 78 at pp. 1–9). Under Objection Numbers 8 and 9, counsel raised the same argument, now suggested by Petitioner as a basis for this particular claim, challenging the PSR's conclusion that he should be held responsible for 70.95 grams of actual methamphetamine underlying the offense alleged in Count Nine, for which the jury could not reach a verdict. (*Id.* at pp. 7–9). Counsel also argued vigorously that Petitioner's total guideline offense level should have been 34 (as opposed to 46), with a guideline imprisonment range of 151 to 188 months. (*Id.* at p. 15).

Lastly, Petitioner's attorney also filed a sentencing memorandum requesting a variant sentence of 120 months, arguing, in part, that the United States' witnesses lacked credibility. (Doc. 80). The Court imposed a term of imprisonment consisting of 192 months—approximately four months over the maximum guideline range urged by Petitioner's attorney. Given his eligibility for a life sentence, this was a significant downward variance achieved as a result of his attorney's efforts. Therefore, Petitioner's claim that his counsel failed to object to the amounts is baseless. Similarly, appellate counsel chose not to raise this issue on appeal, presumably because she deemed it to be a frivolous argument. Accordingly, neither trial nor appellate counsel's actions were deficient.

### *6. Ineffective Assistance of Appellate Counsel*

Lastly, Petitioner alleges ineffective assistance of appellate counsel for failing to challenge, on appeal, the sufficiency of the evidence supporting his conviction for Count One, both at trial and at sentencing. (Doc. 135-1 at p. 11). Sufficiency of the evidence claims must be raised on appeal and are not cognizable on a collateral motion under § 2255 absent a showing of cause and prejudice justifying the procedural default. *See Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972); *Mendoza v. United States*, 365 F.2d 268, 272 (5th Cir. 1966). Petitioner therefore submits that he received ineffective assistance of counsel because appellate counsel failed to raise the insufficiencies of evidence at that time. However, as provided above, the record contains substantial evidence against Petitioner, sufficient to support the jury's verdict. Therefore, Petitioner was not prejudiced by appellate counsel's failure to raise these frivolous issues on appeal. As such, appellate counsel was not ineffective, and Petitioner has failed to establish "cause" and "prejudice."

### C. Prosecutorial Misconduct

To establish prosecutorial misconduct there must be a showing that the misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential. *Villanueva v. Stephens*, 555 F. App'x 300, 307 (5th Cir. 2014) (citing *Berger v. United States*, 295 U.S. 78, 84–9 (1935)) (the prosecutor misstated evidence, deliberately misunderstood witness statements, assumed prejudicial facts not in evidence, and more).

15

### *1. Knowingly Presenting Perjured Testimony*

Petitioner argues that the Assistant United States Attorney ("prosecutor") used law enforcement officers "to shore[] up the testimony of unreliable witnesses" who were drug users and sellers, namely, Honeycutt and Muniz. (Doc. 135-1 at pp. 12–13). Petitioner further argues that the prosecutor used the informants' testimony without sufficient physical evidence to demonstrate the truth of their testimony, which when coupled with the support of law enforcement, "was enough to confuse, and convince a jury that not only was [Petitioner] a part of the conspiracy but in fact a leader/organizer." (*Id.* at p. 12).

The Fifth Circuit has held that due process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements. *United States v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir. 1981) (citing *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981)).

Here, Petitioner suggests no reason to assume the prosecutor was aware of any actual perjury. In fact, Petitioner's counsel cross-examined each witness, thus, he had an opportunity to elicit any inconsistent statements and contradict any evidence for the jury's benefit. Therefore, Petitioner has not established any prosecutorial misconduct with respect to the informants' testimony because he has presented no evidence to support his claims.

### 2. Using Inadmissible Exhibits and Testimony for the Purposes of Misleading and Confusing the Jury

Petitioner further argues that the prosecutor used exhibits and testimony—*i.e.* transactions from deposits in his bank account relating to Count Two, and the statements from Muniz and Honeycutt—which resulted in the prosecutor knowingly misleading the jury by presenting evidence outside the timeline of the charged conspiracy. (Doc. 135-1 at pp. 14–15).

As previously established, the Court allowed the prosecutor to use evidence relating to Count Two to support the charged conspiracy. Thus, Petitioner has not established any prosecutorial misconduct with respect to the informants' testimony or exhibits relating to bank statements. Further, the record is devoid of evidence that any alleged misconduct was pronounced and persistent, with a probable cumulative and consequential effect upon the jury. Petitioner has presented no evidence that the prosecutor misstated evidence or deliberately mischaracterized witness statements. Therefore, all prosecutorial misconduct claims lack merit.

## IV. CONCLUSION

**IT IS ORDERED** that the **Motion to Vacate under 28 U.S.C. § 2255 (Doc. 135)** is **DENIED**.

Baton Rouge, Louisiana, this 23rd day of April, 2018.

*[signature]*

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA